IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **DON H. BOSHERS**, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case Number: _____ |
| | ) | |
| v. | ) | Judge: _____ |
| | ) | |
| **MAURY COUNTY BOARD OF EDUCATION, LISA A. VENTURA**, and **CHANDLER R. ANDERSON**, | ) | Mag. Judge: _____ |
| | ) | **JURY DEMAND** |
| | ) | |
| *Defendants*. | ) | |

# C O M P L A I N T

The plaintiff, **DON H. BOSHERS**, by his undersigned attorney, sues the defendants, **MAURY COUNTY BOARD OF EDUCATION**, **LISA A. VENTURA**, and **CHANDLER R. ANDERSON**, for damages, and says:

**Parties**

1. The plaintiff is an individual resident of Maury County, Tennessee.

2. The defendant **MAURY COUNTY BOARD OF EDUCATION** (hereinafter, "the School Board"), is a local governmental entity of the State of Tennessee vested by state law with the power and duty, *inter alia*, to manage and control the public schools of Maury County, Tennessee.

3. The defendant **LISA A. VENTURA** (hereinafter, "Ventura") is the Director of Schools employed by the School Board as the chief executive officer of the Maury County, Tennessee, public schools.

4. The defendant **CHANDLER R. ANDERSON** (hereinafter, "Anderson") is an individual

resident of Maury County, Tennessee.

### Jurisdictional Statement

5. Count I, II, and III, below, are civil actions for deprivation of constitutional rights brought pursuant to 42 U.S.C. §1983. Accordingly, Counts I, II, and III of this action present federal questions over which this court has jurisdiction pursuant to 28 U.S.C. §1331, and constitute claims to redress the deprivation, under color of a state law, statute, ordinance, regulation, custom or usage, of rights secured by the Constitution of the United States, over which this court has jurisdiction pursuant to 28 U.S.C. §1343(a)(3).

6. Counts IV and V, below, are claims for damages brought under the tort laws of the State of Tennessee that are so related to the federal-question claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, Counts IV and V of this action fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

### Statement of the Claim

### Factual Background

7. For a span of nineteen and a half years, from July 31, 2003, to January 6, 2023, the plaintiff was in the employ of the School Board as a school bus driver in Maury County, Tennessee.

8. On December 22, 2022, the plaintiff engaged in political speech initiated by him on the social-media website "FaceBook" in which he criticized the local governmental practice

of salting area roads in anticipation of snow and freezing temperatures.

9. Thereafter, shortly after midnight on December 23, 2022, Anderson sent a communication called a "private message" to the plaintiff on the FaceBook platform in which he vulgarly excoriated the plaintiff for having criticized the road-salting program.

10. Anderson's private message then related his home address to the plaintiff and, in essence, bizarrely challenged the plaintiff to come over to Anderson's house a physical fight to somehow demonstrate how "convicted" the plaintiff was in his beliefs.

11. The FaceBook platform also has a feature called "audio call" by which a participant may initiate a direct audio communication with another participant.

12. Shortly after Anderson's private message to the plaintiff related above, Anderson initiated an audio call to the plaintiff.

13. Anderson and the plaintiff then engaged in a conversation about the road-salting issue. Anderson claimed to be a friend of a person who drove a road-salting truck for the county, and Anderson indicated that he found the plaintiff's comments about road-salting to be insulting.

14. The conversation then turned to the participation by Anderson's son on the basketball team for Mount Pleasant Middle School (hereinafter, "MPMS"), a middle school in Maury County, Tennessee.

15. As a school bus driver, the plaintiff had significant interest in the activities and successes of county public school students and athletic teams. The plaintiff was aware that Anderson had developed numerous and significant contacts among county school system employees, and at one point during the conversation the plaintiff related his opinion that Anderson's son's playing basketball for MPMS was largely the consequence of a personal

relationship between Anderson and the team's coach.

16. During the conversation, the plaintiff indicated to Anderson that he would be at the MPMS game scheduled for January 3, 2023, inasmuch as the plaintiff had been invited to attend the game by several of his bus-riding students.

17. After the audio call, Anderson persisted in sending private messages to the plaintiff threatening him with a physical confrontation at the basketball game and pointing out to the plaintiff (a 68-year-old man) that he, Anderson (a much younger man), was 6'7" tall, 270 pounds, and "work[s] out every fucking day."

18. Anderson then sent a succession of private messages to the plaintiff threatening violence to the plaintiff at the ball game, accusing the plaintiff of being a "pervert" for attending middle school ball games, showing the plaintiff that he, Anderson, had searched out the plaintiff's personal information details on a website called "Nuwber," and concluding the string of private messages with a claim that the plaintiff is a "68 year old pathetic piece of shit."

19. The MPMS basketball game that had been scheduled for January 3, 2023, was canceled, and the next game was scheduled for January 5, 2023.

20. Sometime prior to January 3, 2023, Anderson contacted one or more employees of the School Board and falsely claimed that the plaintiff had threatened to attack Anderson at the ball game.

21. As a consequence of Anderson's false reports relating to the plaintiff, and of Anderson's relationships with various employees of the School Board, school authorities placed security agents of the School Board on notice prior to the January 5. 2023, ball game that Anderson had claimed to be under threat of attack by the plaintiff and that the security

agents should be looking out for the plaintiff to attend the ball game and cause a physical confrontation with Anderson.

22. On January 5, 2023, the plaintiff attended the basketball game at MPMS.

23. At the game, the plaintiff took a seat in the gymnasium bleachers and began to watch the team warm up prior to the game.

24. Thereafter, the plaintiff received a cellphone call from Eric Perryman, the School Board's Assistant Superintendent of Operations, who was in attendance at the game and who informed the plaintiff that two security agents were coming up into the bleachers to get the plaintiff.

25. Thereafter, the two security agents approached the plaintiff and escorted him into the lobby of the gymnasium, where Perryman was waiting to speak to the plaintiff.

26. Thereafter, as directed by Mr. Perryman, the security agents told the plaintiff that he had to leave the facility.

27. The plaintiff asked the security agents why he had to leave, as he had done nothing wrong.

28. At that point in time, Anderson bolted into the lobby from the gymnasium and angrily attempted to physically attack the plaintiff, but Anderson was restrained from doing so by several other people.

29. The plaintiff continued to protest to the security agents that he shouldn't be required to leave, inasmuch as Anderson was the one out-of-control. Nonetheless, Perryman directed the plaintiff to leave, and the plaintiff complied.

30. All actions complained of by Ventura herein were committed under color of state law regarding and regulating her authority as Maury County Director of Schools.

31. On January 6, 2023, without prior notice or an opportunity to be heard, Ventura had a letter delivered to the plaintiff notifying the plaintiff that his employment with the School Board had been terminated, effective immediately.

32. Shortly thereafter, the plaintiff was notified by Ventura or her agent that he was forbidden from coming upon property of the School Board, thereby prohibiting the plaintiff from attending athletic contests or other activities open to the public, generally.

**COUNT I: SECTION 1983 CLAIM AGAINST VENTURA FOR RETALIATION AGAINST PLAINTIFF FOR EXERCISE OF FIRST AMENDMENT RIGHTS**

33. This count is an action against Ventura in her individual capacity brought pursuant to 42 U.S.C. § 1983 for deprivation, under color of state law, of the plaintiff's rights, privileges, and immunities secured by the First and Fourteenth Amendments to the Constitution of the United States.

34. The plaintiff incorporates by reference the allegations of paragraphs 7 through 32, above.

35. Ventura's termination of the plaintiff was in direct retaliation for:

   (a) the plaintiff's exercise of his first amendment right to free speech relating to issues of general public concern, namely a) the propriety of the government's road-salting activities and b) the eligibility and manner of selection of student athletes to play on athletic teams of the public schools; and

   (b) the plaintiff's exercise of his first amendment right to freedom of association to interact with others — in this case Anderson — for the purpose of espousing his opinions on the foregoing issues of general public concern and of convincing the others of the justness of his opinions.

36. The actions of Ventura in terminating the plaintiff's employment were willful, and were

motivated by a malicious intention on her part to punish the plaintiff for the engaging in protected expressions that Ventura perceived to be offensive to a favored member of the community and for associating with Anderson for the purpose of engaging in such expression.

37. The plaintiff's expressions and association constituted activities protected by the First Amendment to the Constitution of the United States, as made applicable to the actions of state governments and their political subdivisions by virtue of the due-process clause of the Fourteenth Amendment to the Constitution of the United States.

38. The actions of Ventura in terminating the plaintiff's employment injured the plaintiff in a way likely to chill a person of ordinary firmness from further participation in the expression and association activities engaged in by the plaintiff.

39. In part, the plaintiff's constitutionally protected activities motivated the adverse actions of Ventura against the plaintiff.

40. As a direct, proximate result of the actions of Ventura as aforesaid, the plaintiff was deprived of his rights under the First Amendment to the Constitution of the United States, as made applicable to the states and their political subdivisions by the Fourteenth Amendment to the Constitution of the United States, to be free from abridgment of his freedom of speech and abridgment of her right of association.

41. As a direct, proximate result of the deprivation of his constitutional right as aforesaid, the plaintiff has suffered, and will in the future suffer, loss of employment wages and benefits (including back-pay and front-pay), as well as extreme embarrassment and mental anguish.

## COUNT II: SECTION 1983 CLAIM AGAINST VENTURA FOR DEPRIVATION OF PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS OF LAW

42. This count is an action against Ventura in her individual capacity brought pursuant to 42 U.S.C. § 1983 for deprivation, under color of state law, of the plaintiff's rights, privileges, and immunities secured by the Fourteenth Amendment to the Constitution of the United States.

43. The plaintiff incorporates by reference the allegations of paragraphs 7 through 32, above.

44. The plaintiff has a liberty interest protected under the Fourteenth Amendment to the United States Constitution to be free to attend events conducted by the School Board and open generally to the public, and while in such attendance to express himself and associate with the public for any legitimate purposes.

45. The plaintiff's liberty interest as aforesaid requires procedural due process prior to a restriction or deprivation of such interest, yet Ventura's unilateral termination of the plaintiff's employment, without prior notice and an opportunity to be heard, deprived the plaintiff of his liberty interest without due process of law.

46. As a direct, proximate result of the deprivation of his constitutional right to procedural due process of law as aforesaid, the plaintiff has suffered, and will in the future suffer, loss of employment wages and benefits (including back-pay and front-pay), as well as extreme embarrassment and mental anguish.

## COUNT III: SECTION 1983 CLAIM AGAINST THE SCHOOL BOARD FOR POLICY OR CUSTOM RESULTING IN CONSTITUTIONAL VIOLATIONS

47. This count is an action against the School Board brought pursuant to 42 U.S.C. § 1983 for deprivation, under color of state law, of the plaintiff's rights, privileges, and

– 8 –

Case 1:24-cv-00001 Document 1 Filed 01/05/24 Page 8 of 13 PageID #: 8

immunities secured by the Constitution of the United States.

48. The plaintiff incorporates by reference the allegations of paragraphs 7 through 32, 35 through 41, and 44 through 46, above.

49. The School Board maintained a policy or custom that caused the violation of the plaintiff's rights as aforesaid, inasmuch as:

   (a) The School Board employed and established Ventura as the chief policy maker in the area of personnel decision-making for the school district.

   (b) In turn, Ventura overtly adopted a policy of retaliation against protected speech by her personally terminating, the employment of the plaintiff in retaliation for the plaintiff's expression and association.

   (c) In turn, Ventura overtly adopted a policy of unilateral termination of employees such as the plaintiff under circumstances in which a constitutionally protected liberty interest of the employee existed, all without procedural due process of law.

   (d) The School Board failed to adequately train and supervise Ventura, to the extent that such failures amount to deliberate indifference to the constitutional rights of the plaintiff and of others similarly situated. Specifically:

   (1) Ventura's training and supervision was inadequate to prepare her for the tasks that directors of schools in her position must perform.

   (2) The aforesaid inadequacy persisted because of the School Board's deliberate indifference, manifested by the School Board's failure to train Ventura to handle recurring situations presenting an obvious potential for retaliation against protected speech and association.

   (3) The aforesaid inadequacy is closely related to or actually caused the deprivations

of the plaintiff's constitutional rights as aforesaid.

50. As a direct, proximate result of the unlawful policy or custom of the School Board as aforesaid, the plaintiff was deprived of his rights under the First Amendment to the Constitution of the United States, as made applicable to the states and their political subdivisions by the Fourteenth Amendment to the Constitution of the United States, to be free from abridgment of his freedom of speech and of his right of association.

51. As a direct, proximate result of the School Board's policy or custom as aforesaid, resulting in the deprivation of the plaintiff's constitutional right as aforesaid, the plaintiff has suffered, and will in the future suffer, loss of employment wages and benefits (including back-pay and front-pay), as well as extreme embarrassment and mental anguish.

### COUNT IV: PENDENT STATE CLAIM AGAINST ANDERSON FOR INTENTIONAL INTERFERENCE WITH AN EMPLOYMENT RELATIONSHIP

52. This count is an action against Anderson for intentional interference with an employment relationship brought pursuant to the tort law of the State of Tennessee.

53. The plaintiff incorporates by reference the allegations of paragraphs 7 through 32, above.

54. In addition to Anderson's having contacted one or more employees of the School Board prior to the January 5, 2023, ball game and falsely claiming that the plaintiff had threatened to attack Anderson at the ball game, Anderson communicated with school officials and employees during the evening of January 5, 2023, and thereafter prior to the plaintiff's termination with the intent to procure the discharge of the plaintiff from his employment.

55. Anderson's attempts to procure the discharge of the plaintiff from his employment were

wholly without justification and, instead, were maliciously and vindictively in response to the plaintiff's prior expressions of opinion with respect to the road-salting operations and with respect to the circumstances surrounding Anderson's son becoming a member of the MPMS boys' basketball team.

56. As a direct, proximate result of the unlawful, intentional interference by Anderson with the plaintiff's employment relationship as aforesaid, the plaintiff was terminated from his employment, and has suffered, and will in the future suffer, loss of employment wages and benefits (including back-pay and front-pay), as well as extreme embarrassment and mental anguish.

### COUNT V: PENDENT STATE CLAIM AGAINST ANDERSON FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. This count is an action against Anderson for intentional infliction of emotional distress brought pursuant to the tort law of the State of Tennessee.

58. The plaintiff incorporates by reference the allegations of paragraphs 7 through 32 and 54 through 55, above.

59. From and after December 23, 2022, and for months after procuring the plaintiff's termination, Anderson maliciously, willfully, and without justification engaged in a course of conduct intended to inflict emotional distress upon the plaintiff in retaliation for the plaintiffs prior expressions of opinion with respect to the road-salting operations and with respect to the circumstances surrounding Anderson's son becoming a member of the MPMS boys' basketball team.. Anderson's behaviors included, without intending any limitation, the following:

(a) Taunting the plaintiff with vulgar name-calling and calls for mutual combat.

(b) Communicating with various officials and employees of the School Board in an attempt to cause the plaintiff to lose his job.

(c) Attempting at the ball game to physically attack the plaintiff and, after being restrained by others, lying about the plaintiff's allegedly threatening to harm Anderson.

(d) After procuring the termination of the plaintiff, repeatedly taunting the plaintiff about having lost his job and otherwise being a worthless person.

(e) Taunting the plaintiff with references to employment difficulties experienced by the plaintiff's spouse.

(f) Taunting the plaintiff with false and unflattering references to the plaintiff's daughter.

(g) Conducting an audio call with the plaintiff in the presence of and with the participation of Anderson's two teenage sons for the purpose of taunting the plaintiff.

60. Anderson's actions as aforesaid, in combination, were so outrageous as not to be tolerated by civilized society. Anderson's actions were atrocious, utterly intolerable, and beyond all bounds of decency.

61. As a direct, proximate result of Anderson's intentional actions as aforesaid, the plaintiff suffered and continues to suffer severe emotional distress.

### **Prayer for Relief**

WHEREFORE the plaintiff prays for entry of judgment of and from the the defendants, jointly and severally and to the extent permitted by law, for compensatory damages in an amount not less than five hundred thousand dollars ($500,000.00) amd punitive damages in an amount not less than five hundred thousand dollars ($500,000.00), together with the plaintiff's reasonable

attorney's fees associated with the Section 1983 claims, and the costs of this action.

## Jury Demand

The plaintiff demands trial by jury.

> Respectfully submitted,
>
> **MACPHERSON & YOUMANS, P.C.**
>
> by    s/ Robert D. MacPherson
> Robert D. MacPherson, BPR #022516
> MacPherson & Youmans, P.C.
> 107 S. Greenwood Street, Suite B
> Lebanon, Tennessee 37087
> Telephone: (615) 444-2300
> email: *rdmacpherson@macyolaw.com*
> Attorney for the plaintiff